UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACQUELINE ABELLI,<br>    *Plaintiff*,<br><br>    *v.*<br><br>ANSONIA BOARD OF EDUCATION,<br>    *Defendant*. | Civil No. 3:12-cv-1432 (JBA)<br><br><br>December 13, 2013 |

**RULING GRANTING DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Jacqueline Abelli filed suit against her former employer, the Ansonia Board of Education under 42 U.S.C. § 1983, alleging that she was deprived of a liberty interest without due process of law in the form of a "stigma-plus" claim stemming from her termination as a non-tenured teacher at Ansonia High School.  Defendant now moves [Doc. # 42] for judgment on the pleadings on the grounds that Plaintiff has failed to state a plausible stigma-plus claim.  For the reasons that follow, Defendant's motion is granted.

**I.      Factual and Procedural Background**

Plaintiff was employed by Defendant for five years, from September 2007 to June 2012, first as a "full-time permanent substitute" for eighteen months and then as the Culinary Arts teacher for three years.  (2d Am. Compl. [Doc. # 38] ¶ 3.)  In the spring of 2011, Carole Merlone, the Superintendent of the Ansonia Public School system, "wrongfully accused the plaintiff of stealing money from the lunch program in front of Lida Provencale, the school secretary, and Karen Phipps, a computer science teacher." (*Id.* ¶ 4.)  In April 2011, Eileen Ehman, the Grants Manager for Ansonia Public Schools,

"accused the plaintiff of mis-handling Perkins grant funds," and reported her concerns to Business Manager James Gaskins, but did not notify Plaintiff.  (*Id.* ¶ 5.)  In May 2011, Merlone and Susan McKernan, Principal of Ansonia High School, "accused the plaintiff of theft of Perkins Grant funds."  (*Id.* ¶ 6.)  The Superintendent "communicated these accusations to Eileen Ehman and James Gaskins."  (*Id.*)  Gaskins also accused Plaintiff of "misuse of taxpayer monies" and other "alleged improprieties" in May 2011, accusations which he repeated at a public hearing on April 4, 2012. (*Id.* ¶ 7.)

Also in May 2011, Defendant's Food Director Dominic Golia accused Ms. Abelli of "mis-handling cash . . . received in connection with a student fund-raiser."  (*Id.* ¶ 8.) Plaintiff was required to appear at a meeting with the Superintendent and other school administrators, where she "learned that these individuals had discussed and investigated a generalized suspicion that she was using the budget for the Culinary Arts program for her personal use."  (*Id.*)

On March 2, 2012, Merlone notified Plaintiff by letter that her employment contract would not be renewed.   In this letter, Merlone "once again falsely and maliciously accused the plaintiff of several crimes," including "misappropriation of federal grant money."[1]  (*Id.* ¶ 11.)  Plaintiff "demanded" a "name-clearing hearing," and a public hearing was scheduled for April 4, 2012 at Ansonia City Hall.  (*Id.* ¶¶ 12–13; Letters Between John R. Williams & Dr. Carol Merlone, Ex. B to Def.'s Mem. Supp. [Doc. # 42-3] at 6–9.)  Plaintiff alleges that at this hearing, statements were made by Gaskins, Golia, Ehrman, and Merlone about the alleged misuse of funds "along with other damaging allegations which were untrue." (2d Am. Compl. ¶ 13.)  Plaintiff further alleges that this meeting did not afford her with the due process to which she was entitled, because Defendant "refused to consider [her] defense to the aforesaid false and malicious accusations, refused to consider whether the accusations of criminal wrongdoing were accurate or whether non-renewal of [her] contract was justified, but instead merely considered whether Superintendent Merlone had acted arbitrarily and capriciously."  (*Id.* ¶ 15.)  At the conclusion of the hearing, Defendant voted unanimously that Merlone "had

---

[1] The letter stated:

> Please take notice that the Superintendent will be recommending to the Board of Education that your contract of employment as a teacher in the Ansonia school system be nonrenewed, in accordance with the applicable provisions of Connecticut General Statutes Section 10-151. . . . The reasons for this termination is due to:
>> Misappropriation of federal grant money—Perkins Grant; Comingling of funds . . . .

(Letter from Dr. Carol Merlone to Jacqueline Abelli, March 2, 2012, Ex. 1 to 2d Am. Compl.)

not acted arbitrarily or capriciously" and the decision to remove Plaintiff from her position was "upheld."  (*Id.* ¶ 16.)

Plaintiff further alleges that in May 2012—after the hearing but before Plaintiff's termination took effect—Merlone sent an email to Plaintiff accusing her of demonstrating "poor judgment, honesty and failure to follow a directive."  (*Id.* ¶ 9, Email from Dr. Carol Merlone to Jacqueline Abelli, May 3, 2012, Ex. 4 to 2d Am. Compl.) Michael Wilson, the math-science coordinator, and Lou Puglisi, a consultant, were among those copied on the email.  (*Id.*)

Plaintiff alleges that as a result of these incidents, she has suffered a loss of employment, economic losses, the "loss of her good name," public disgrace, and emotional distress (*id.* ¶ 17), all in violation of the Fourteenth Amendment, and requests compensatory damages, attorneys' fees, costs, and "appropriate injunctive relief" (*id.* ¶¶ 18–19.)

Defendant moved [Doc. # 25] to dismiss the Amended Complaint [Doc. # 21] and after hearing oral argument, the Court gave Plaintiff the opportunity to file a second amended complaint in order to clarify her allegations that the stigmatizing statements were published and that Plaintiff was denied sufficient process at the school board hearing.  Accordingly, Defendants' Motion to Dismiss was denied without prejudice to renew as a motion for judgment on the pleadings.  After Plaintiff filed her Second Amended Complaint, this motion followed and the Court heard further arguments from the parties.

II.     **Discussion[2]**

Defendant moves for judgment on the pleadings under Fed. R. Civ. P. 12(c), asserting that Plaintiff's Second Amended Complaint has failed to allege the necessary elements for a "stigma-plus" cause of action.  Defendant contends that (1) the alleged stigma was not concurrent with non-renewal of Plaintiff's contract, (2) the "allegations of publication are insufficient," and (3) the post-deprivation hearing gave Plaintiff an adequate opportunity to counter any stigmatizing statements about her and to attempt to clear her name.[3]  (Def.'s Mem. Supp. [Doc. # 42-1] at 5.)

**A.  Deprivation of Liberty Interest:  Stigma Component**

"In an action based on a termination from government employment, a plaintiff must satisfy three elements in order to demonstrate a deprivation of the stigma

---

[2] "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.  In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  "To survive" either motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Conclusory allegations are not sufficient.  *Id.* at 678–79.

[3] Although Plaintiff alleges that there was one stigmatizing statement made after the public hearing, she does not allege that she thereafter requested another public name-clearing hearing to combat any additional stigma arising from this statement.  As a result, the Court will consider only the statements made up until the April 4, 2012 hearing.  *See Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) ("[The plaintiff] did not ask to confront the Board in a public forum regarding the stigmatizing charges," and therefore, he "failed to request a name-clearing hearing as a matter of law.").

component of a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006).  First, the plaintiff must show that the government made stigmatizing statements about him that "might seriously damage his standing and associations in his community" by calling into question his "good name, reputation, honor, or integrity" or "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).  Second, a plaintiff must prove these stigmatizing statements were made public. Third, the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment.  *Segal*, 459 F.3d at 212–13.

As to the first requirement, it is undisputed that the statements regarding Plaintiff's alleged mishandling of public funds would fit the definition of "stigmatizing statements" that call into question Plaintiff's "good name, reputation, honor, or integrity."  *See id.*

The third requirement—temporal proximity between the stigmatizing statements and Plaintiff's termination—also appears plausibly satisfied.  While the Second Circuit has noted that a typical "stigma-plus" case occurs when the state actor makes the stigmatizing statement at the time of termination, "perfect parity in the origin of the stigma and the plus is not required."  *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005).  Most of the alleged stigmatizing statements occurred at least ten months before Plaintiff received notice of her nonrenewal, although Plaintiff now alleges that additional statements were made one month after the public hearing.  (*See* 2d Am. Compl. ¶¶ 4–9.) Although there is a gap between when these statements were made and Plaintiff's

termination, the allegations of the Second Amended Complaint plausibly suggest that these statements were made "in the course" of Plaintiff's rather protracted termination. Importantly, the statements related to the basis for Plaintiff's termination, which could satisfy the requirement that Plaintiff demonstrate that there was a "proper nexus" between her termination and the statements. *See Patterson v. City of Utica*, 370 F.3d 322, 335 (2d Cir. 2004).

Defendant contends that the second requirement—that the statements were made public—is not properly alleged here, because "the statements were not alleged to be published outside a small circle of stakeholders in the Ansonia school system." (Def.'s Mem. Supp. at 7.)  Plaintiff claims sufficient "publication" when the statements were circulated between school district employees in April through June 2012.  (*See* 2d Am. Compl. ¶ 10.)

For the publication requirement to be satisfied, the "defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest."  *Velez*, 401 F.3d at 87.  A stigmatizing statement is actionable where "governmental allegations of professional incompetence . . . . denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession."  *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630–31 (2d Cir. 1996).

In imposing this requirement in *Bishop v. Wood*, 426 U.S. 341 (1976), "the Supreme Court did not precisely explain what it meant by the word 'public,'" *McCleester*

7

*v. Mackel*, No. 06-CV-120J, 2008 WL 821531, at *21 (W.D. Pa. Mar. 27, 2008), and few cases have examined the scope of the publication requirement.  In *McCleester*, the district court undertook an in-depth analysis and noted that courts have taken two different approaches.  One approach is based on the Supreme Court's holding in *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) in which it rejected an asserted constitutional tort claim for defamatory statements made by the plaintiff's former employer in response to a reference request by a prospective employer.  In doing so, the Supreme Court distinguished the asserted claim from a stigma-plus claim, in which the statements are "made in the context of the employer discharging or failing to rehire a plaintiff who claimed a liberty interest under the Fourteenth Amendment.  Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."  *Id.*

Although *Siegert* did not discuss the issue of publication, from the Supreme Court's rejection of a constitutional tort for simple defamation and its distinguishing of stigma-plus claims, some courts have held that a stigma-plus claim requires a greater showing of publication than the general law of defamation.  *See e.g., Ebehart v. O'Malley*, 17 F.3d 1023, 1028 (7th Cir. 1994) ("In defamation law, it is true 'publication' has a special meaning . . . .  But to deprive a person of his liberty of occupation, the defamatory grounds for his discharge . . . must be made public in a broader sense akin to that required for the tort of invasion of privacy." (internal citations omitted)); *see also McCleester*, 2008 WL 821531, at *22 (citing cases).

In the second approach, courts have concluded that the publication requirement is analogous to that imposed by the general law of defamation in which publication occurs if a defamatory statement is shared with even a single recipient other than the

8

plaintiff.  *See McCleester*, 2008 WL 821531, at *22–23 (citing cases).  Adopting the second view, the *McCleester* court held that a stigma-plus claim was valid even where the defamatory statements were not alleged to have been shared outside of the government, because "even very limited dissemination of" allegations of dishonesty "could seriously damage an employee's reputation."  *Id.* at *22 n.12.

There is support for the second approach in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972), where the Supreme Court held that a stigma-plus claim is predicated on statements that "might seriously damage [a plaintiff's] standing and associations in his community" by calling into question his "good name, reputation, honor, or integrity" or "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."  This approach is also consistent with the Second Circuit's holding in *Brandt v. Board of Cooperative Educational Services*, 820 F.2d 41, 45 (2d Cir. 1987) that even the presence of a stigmatizing statement in an employee's personnel file can satisfy the publication requirement if the plaintiff "is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him."[4]  Publication was also established on this basis in *Segal.  See* 459 F.3d at 213.

---

[4] During the first oral argument in this matter, counsel for Plaintiff suggested that publication of the stigmatizing statements occurred when the March 2, 2012 letter was placed in her personnel file—an assertion not originally pleaded.  (*See* 1st Am. Compl. [Doc. # 21].)  The Court granted Plaintiff leave to file an amended complaint in order to supplement the factual allegations supporting publication, (*see* Order [Doc. # 36]), but in the Second Amended Complaint, Plaintiff still did not allege that any stigmatizing statements were placed in her personnel file.

In holding that the presence of stigmatizing statements in a personnel file constituted publication, the Second Circuit explained that "the degree of dissemination that satisfies the 'public disclosure' requirement" depends upon "the potential effect of dissemination on the employee's standing in the community and the foreclosure of job opportunities." *Brandt,* 820 F.2d at 44. Since this potential danger of serious harm to an employee's reputation that might foreclose future employment could exist even where there is only limited disclosure of stigmatizing statements to the public, the publication element can be plausibly established by allegations of limited internal dissemination. Accordingly, Plaintiff's allegation of internal dissemination of stigmatizing statements is plausibly sufficient where potential employers may contact school district personnel as part of their pre-hiring due diligence, potentially foreclosing future employment opportunities for Plaintiff.

The internal publication of a defamatory statement, however, may be protected by a qualified privilege, such as that for "communications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination." *Torosyan v. Boehringer Ingelheim Pharm., Inc.*, 234 Conn. 1, 29 (1995). Although such communications are deemed to have been published, the qualified privilege protects the employer from liability for these statements so long as the privilege is not abused, such as when statements are made with actual malice (i.e. knowledge of falsity), *see id.*, or if the employer does not "limit[] the publication of the statement to those persons who have a legitimate interest in the subject matter," *Harbolt v. Steel of W. Virginia, Inc.*, 640 F. Supp. 2d 803, 820 (S.D.W. Va. 2009).

Plaintiff alleges that numerous stigmatizing statements were circulated broadly within the school administration on numerous occasions to reach beyond a group of employees that would have had a legitimate interest in learning of these allegations.  For example, Plaintiff alleges that a school secretary, a science teacher, a math-science coordinator, a consultant, and others were recipients of the defamatory statements.  (*See* 2d Am. Compl. ¶¶ 4, 9.)  Thus, Plaintiff's allegation that Defendant internally circulated stigmatizing statements to an unreasonable degree rebuts any asserted privilege of publication by Defendant.

**B.  Deprivation of Property Interest:  Process Component**

Plaintiff must also demonstrate that she was denied the limited due process to which she was entitled as a non-tenured employee.  "Because stigma plus is a species within the phylum of procedural due process claims, . . . it is not enough that the plaintiff has demonstrated the deprivation of her liberty interest . . . .  Stated differently, the availability of adequate process defeats a stigma-plus claim."  *Segal*, 459 F.3d at 213.

"[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely to provide the person an opportunity to clear his name."  *Codd v. Velger,* 429 U.S. 624, 627 (1977) (internal quotation marks omitted).  "The risk inherent in a stigma-plus claim is the risk that the false charges against the plaintiff will go unrefuted and that [her] name will remain stigmatized."  *Patterson*, 370 F.3d at 336.  "The risk will vary depending on the effectiveness of the procedures available and the promptness by which they are afforded."  *Segal*, 459 F.3d at 215.

While "[t]here are only a few cases in this Circuit addressing what kind of process" is "require[d] with respect to a stigma-plus name-clearing hearing," *Patterson*, 370 F.3d at 336, in *Segal*, the Second Circuit concluded that the following procedures available at the plaintiff's hearing were adequate to protect his reputational and professional interests: "the opportunity to present evidence, call witnesses, cross-examine witnesses, and make an oral presentation through . . . counsel," 459 F.3d at 216.   In contrast, in *Patterson*, a name-clearing hearing was inadequate when the plaintiff was not given notice or an opportunity to attend and the defendant "did not present the broad battery of the allegations" that had already been made against the plaintiff.   370 F.3d at 337.   As a result, there "was a substantial risk that the stigma against plaintiff would remain after such hearing."   *Id.*

Plaintiff does not allege that she was denied adequate procedure, and the transcript of the hearing demonstrates that through counsel Plaintiff called witnesses to testify on her own behalf and cross-examined witnesses testifying against her.   (*See* Ansonia Bd. of Educ. Public Hearing Tr., Ex. A to Def.'s Mem. Supp. [Doc. # 42-2].)   The parties also agree that Plaintiff was afforded a hearing that complied with the strictures of Conn. Gen. Stat. § 10-151(c) applicable to the non-renewal of a non-tenured teacher, but disagree about whether this hearing satisfied Plaintiff's constitutional right to a name-clearing hearing.

Plaintiff asserts that a name-clearing hearing must be convened "solely to provide the individual accused with an opportunity to clear his/her name" and cannot be combined with another purpose, such as a Conn. Gen. Stat. § 10-151(c) hearing's

determination of whether a nonrenewal decision was "arbitrary and capricious."[5]   (Pl.'s Mem. Opp. at 3–4.).   Under Conn. Gen. Stat. § 10-151(c), at the purported name-clearing hearing, the Board was required to consider whether the Superintendent's decision to not renew her contract was arbitrary or capricious.   Plaintiff thus contends that the hearing was "hijacked," because instead of considering "whether the accusations of criminal wrongdoing were accurate" and Plaintiff's "defense to the . . . malicious accusations," the Board simply considered the propriety of the Superintendent's decision under a highly deferential standard.  (2d Am. Compl. ¶ 15.)

Defendant asserts that the § 10-151(c) hearing provided Plaintiff even more process than the Constitution requires even if it was not explicitly billed as a "name-clearing hearing."   According to Defendant, "Plaintiff is not entitled to anything more than a public forum to make an effort to clear her name following an alleged stigmatization."  (Def.'s Mem. Supp. at 10.)

In support of her argument Plaintiff relies upon *Donato* in which the Second Circuit held that a "hearing must be held for the *limited* purpose of giving a discharged employee an opportunity to clear her name."   96 F.3d at 633 (emphasis supplied by Plaintiff).   According to Plaintiff, the Second Circuit's use of the word "limited" precluded the Board from combining Plaintiff's constitutionally mandated name-clearing hearing with a hearing under Conn. Gen. Stat. § 10-151(c).

---

[5] In the Second Amended Complaint, Plaintiff asserts that she "demanded" a "name clearing hearing" (2d Am. Compl. ¶ 12), but in his letter to the Superintendent requesting this hearing, Plaintiff's counsel did not use the term "name-clearing hearing" but rather requested a hearing "[a]s provided by" § 10-151, (Letter from John R. Williams to Dr. Carol Merlone, Mar. 21, 2012, Ex. B-1 to Def.'s Mem. Supp. [Doc. # 42-3] at 3.)

The Court disagrees with this interpretation.  Read in the proper context, the cases relied upon by Plaintiff make clear that the "limited purpose" of a name-clearing hearing does not preclude the government from conducting the hearing under procedures mandated by state law.  Instead, this language serves not as a limitation on what the Board may do at the hearing, but rather a description of the "limited nature of [Plaintiff's] right" to such a hearing, because an "at-will government employee may be terminated for cause or for no cause whatsoever." *Segal*, 459 F.3d at 213.

In *Segal*, the Second Circuit held that the administrative procedures afforded to a non-tenured teacher to challenge her termination under New York City Department of Education Regulation C-31 were adequate to satisfy due process requirements.[6]  The Second Circuit held that these procedures—similar to those afforded by Conn Gen. Stat. § 10-151(c)—"were sufficient to safeguard Segal's reputational and professional interests," because they provided "her with the means necessary to clear her name, including the opportunity to present evidence, call witnesses, cross-examine witnesses, and make an oral presentation through union-selected counsel." *Segal*, 459 F.3d at 216.

---

[6] "The C–31 regulation provides for extensive procedures to review the Chancellor's initial decision: (1) the right to a hearing, if the employee requests one; (2) notice, at least three weeks before the hearing, of the time, date, and place of the hearing; (3) written notice of the employee's rights at the hearing; and the rights (4) to be represented by an advocate selected by the employee's union, (5) to present all relevant evidence, (6) to call witnesses on the employee's behalf, (7) to cross-examine witnesses, and (8) to make an oral presentation. The hearing must be held within one year of the employee's request for a hearing. At the hearing, the Department must present evidence to support its decision but is not obligated to call witnesses. The Chancellor is authorized to uphold his previous decision to terminate, to execute his previous intention to terminate, or to reinstate the employee. The employee is notified in writing of the Chancellor's decision." *Segal*, 459 F.3d at 216.

14

The only meaningful distinction between Conn Gen. Stat. § 10-151(c) and the procedures at issue in *Segal* is the standard of review.  In a Conn Gen. Stat. § 10-151(c) hearing, the Board reviews the Superintendant's action under a deferential standard and is constrained in its authority to reverse this decision.  *See* Conn. Gen. Stat. § 10-151(c) ("The board of education shall rescind a nonrenewal decision only if the board finds such decision to be arbitrary and capricious.").  New York's C-31 does not place limitations on the Chancellor's authority to reverse the original decision to non-renew.  *See Segal*, 459 F.3d at 216 ("The Chancellor is authorized to uphold his previous decision to terminate, to execute his previous intention to terminate, or to reinstate the employee.").

This distinction between the two procedures is not material here, however, because the Conn. Gen. Stat. § 10-151(c) hearing procedures provided Plaintiff with an opportunity to clear her name.  Beyond the opportunity to be heard, a non-tenured employee is not guaranteed any particular result.  *See id.* ("Because an at-will employee lacks a property interest in continued employment, she has no right to a particular outcome following an adequate name-clearing hearing; the government is simply required to provide her with an opportunity to salvage her name.").

Plaintiff does not allege that she was denied an opportunity to be heard publicly, to call witnesses, or to present evidence, but instead asserts that it was not "meaningful" and she was denied "the procedural due process of law to which she was entitled, in that [the Board] refused to consider the plaintiff's defense" and instead "merely considered whether Superintendent Merlone had acted arbitrarily and capriciously."  (2d Am. Compl. ¶¶ 14–15.)  Plaintiff makes no other allegations of insufficiency in the hearing, and her claim depends upon her assertion that the Board improperly combined her

name-clearing hearing with the Conn. Gen. Stat. § 151-10(c) review of the Superintendent's decision.  This assertion is legally insufficient to support a claim that Plaintiff was denied a name-clearing hearing, because the Second Circuit has "held on numerous occasions that [a New York C.P.L.R.] Article 78 proceeding is a perfectly adequate post deprivation remedy," *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996), and the standard of review in such a hearing is identical to that employed under Conn. Gen. Stat. § 10-151(c), *see Brevot v. New York City Dep't Of Educ.*, No. 04-cv-7959 (GEL), 2007 WL 690130, at *9 (S.D.N.Y. Mar. 6, 2007) ("Article 78 of the N.Y. C.P.L.R.[] provides for injunctive relief where a 'body or officer' of New York State behaves in an 'arbitrary and capricious manner.'").

Because Plaintiff's Conn. Gen. Stat. § 10-151(c) post-deprivation hearing provided Plaintiff with an adequate opportunity to publicly clear her name, she has failed to state a plausible stigma-plus claim.

## III.    Conclusion

Defendant's Motion for Judgment on the Pleadings [Doc. # 42] is GRANTED. The Clerk is directed to close the case.


IT IS SO ORDERED.

        /s/
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 13th day of December, 2013.